**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MARISHA THAKKER, *et al.*,

        Plaintiffs,

   v.

TRACY RENAUD, Senior Official
Performing the Duties of the Director, U.S.
Citizenship and Immigration Services[1],

        Defendant.

Civil Action No. 20-1133 (CKK)

---

**MEMORANDUM OPINION**
(March 22, 2021)

In this action, twelve Plaintiffs sue Tracy Renaud, who currently performs the duties of Director of the U.S. Citizenship and Immigration Services ("USCIS" or "the Government"), claiming that the Government's delay in adjudicating their Form I-526 petitions for immigrant investor visas is "unreasonable" under the Administrative Procedure Act ("APA"). *See* Am. Compl. ¶¶ 177–99 ECF No. 5. Plaintiffs seek an order compelling USCIS to adjudicate their petitions and declaring the Government's delay "unreasonable." *Id.* ¶¶ 24, 204–06.

Before the Court is the Government's [8] Motion to Dismiss, in which the Government argues that Plaintiffs' Amended Complaint fails to state a plausible claim for unreasonable delay and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon review of the pleadings,[2] the relevant legal authority, and the record as a whole, the Court finds that

---

[1] Under Federal Rule of Civil Procedure 25(d), Tracy Renaud is substituted for Kenneth T. Cuccinelli, former Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, as the Defendant in this suit.

[2] The Court's consideration has focused on the following: Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. 8; Plaintiffs' Amended Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Pls.'

Plaintiffs' Complaint fails to allege a plausible claim of unreasonable delay under the APA. Accordingly, the Court shall grant the Government's Motion to Dismiss.

Before addressing the Government's Motion to Dismiss, the Court notes that on February 8, 2021, the Government filed a [18] Notice indicating that the Form I-526 petitions of nine Plaintiffs have been "approved" since the parties completed briefing on the Government's Motion. *See* Notice at 2, ECF No. 18. The Court finds that the Amended Complaint's claims as to these Plaintiffs are now moot, as the Government has granted the remedy Plaintiffs request (adjudication of their petitions). Accordingly, the Court shall dismiss the claims as to those nine Plaintiffs.[3] The remainder of this Memorandum Opinion addresses the claims and Motion to Dismiss as to the remaining three plaintiffs.

## I.   BACKGROUND

Plaintiffs Neha Bhatia, Smiral Shah, and Darshan Rameshchandra Kadia are Indian nationals who have each filed with USCIS a petition for a visa under the "EB-5" Immigrant Investor Program, and are each awaiting USCIS's adjudication of their petition. Because some context about the EB-5 program is helpful to understand Plaintiffs' claims, the Court shall first provide background information about that program before discussing the facts pertinent to resolving the pending motion.[4]

---

Opp'n"), ECF No. 12; and Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 14. The Court has also reviewed the Notices of Supplemental Authority filed by Plaintiffs, *see* ECF No. 13, 17, and 19, and the Government, *see* ECF No. 16 and 20, as well the Government's Response to Plaintiffs' [17] Notice, *see* ECF No. 18.

[3] The Government indicates that the I-526 petitions for the following Plaintiffs have been approved: (1) Marisha Thakker; (2) Hanuma Reddy Nanda Kumar; (3) Krunal Desai; (4) Rafi Palagiri; (5) Sharad Bagireddi Reddy; (6) Mittul Rameshbhai Patel; (7) Punit Awatramani; (8) Bharti Gupta; and (9) Assad Khan. *See* Notice at 2, ECF No. 18.

[4] As discussed *infra* Section II, in ruling on Rule 12(b)(6) motion to dismiss, the Court may consider documents upon which the Complaint relies and documents in the public record of which the court may take judicial notice. Here, Plaintiffs' Complaint discusses in detail the EB-5 investor

**A. The EB-5 Immigrant Investor Program**

The Immigration and Nationality Act ("INA"), U.S.C. §§ 1101 *et seq.*, authorizes the issuance of so-called "EB-5" visas to immigrants who have "invested" capital in a "new commercial enterprise" that "will benefit the United States economy and create full-time employment" for ten citizens or non-citizens with work authorization. 8 U.S.C. § 1153(b)(5)(A)(i)-(ii). At the time relevant to Plaintiffs' Complaint, the applicant must have also made a direct investment of at least $1,000,000 *or* an investment of $500,000 into a "targeted employment area." § 1153(b)(5)(C)(ii).[5] A "targeted employment area" is a "rural area or an area which has experienced high unemployment." § 1153(b)(5)(B)(ii); *see also* 8 C.F.R. § 204.6(e) ("Targeted employment area means an area that, at the time of investment, is a rural area or is designated as an area that has experienced unemployment of at least 150 percent of the national average rate.").

USCIS allows certain "economic units" to apply for status as a "targeted employment area" and designation as a "Regional Center" through the Immigrant Investor Pilot Program. *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(m). To become a "Regional Center," an economic unit must promote economic growth

---

program and relies on, for example, USCIS regulations, policy statements, and website pages. *See* Am. Compl. ¶¶ 26–66. Accordingly, the Court may take judicial notice of these materials, as well as the material cited in the Court's discussion here which includes publicly available information about the program.

[5] Effective November 21, 2019, the threshold amounts required for EB-5 investments were increased from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas. *See* Final Rule, *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,808 (Jul. 24, 2019). The Government notes that "[b]ecause Plaintiffs filed their petitions before the requisite amounts were changed, they may still qualify under the old amounts." *See* Def.'s Mem. at 2 n.3.

through "increased export sales, improved regional productivity, job creation, or increased domestic capital investment."  8 C.F.R. § 204.6(m)(3)(i).  A foreign investor's investment in an approved Regional Center satisfies the EB-5 "employment-creation" requirement by creating jobs indirectly.  *Id.* §§ 204.6(j)(4)(iii), 204.6(m)(7)(ii); *see also* Interim Rule, Immigrant Investor Pilot Program, 58 Fed. Reg. 44,606, 44,607 (Aug. 24, 1993).

To become a lawful permanent resident under the EB-5 Program, an applicant must first file with USCIS a petition for classification as an EB-5 investor, using a "Form I-526."  *See* 8 C.F.R. § 204.6(a), (c).  Once the Form I-526 is approved by USCIS, the applicant must still wait for a visa to become available, which, the D.C. Circuit has observed, "may take years," *Mirror Lake Village, LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020); *see also Nohria v. Renaud*, No. 20-cv-2086-BAH, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) ("Successful adjudication and approval of an I-526 petition makes a petitioner *eligible* for a visa, but does not automatically provide a visa."(emphasis added)).

Because the INA limits the total number of visas available each fiscal  year and allots percentages of visas by country and type of visa, [6] when the demand for visas is higher than the supply, visa petitions are queued based on their "priority date"—typically the date the visa petition was filed with USCIS.  8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d).  A petitioner then becomes eligible for a visa when the "priority date" is listed for the applicant's country and visa category in the State Department's monthly Visa Bulletin.  *See* Am. Compl. ¶¶ 64–65 (citing May 2020 Visa Bulletin).

---

[6] The INA limits the total number of immigrant visas per year, the total number of employment-based visas granted to individuals from a given country, and also limits EB-5 visas to 7.1% of all employment-based visas granted. 8 U.S.C. § 1151 (a)(2), (b)(5)(A), (d).

USCIS historically processed I-526 Forms according to a "first in, first-out" method.  *See* Am. Compl. ¶ 64; Def.'s Mot. at 5.[7]  However, effective March 2020, USCIS adopted a new policy to prioritize petitions from nationals of countries "where visas are immediately available, or soon available" based on the per-country limits.  *See* Am. Compl. ¶ 64; Def.'s Mot. at 5.  As applied to the EB-5 investor program, this process allows the USCIS Immigrant Investor Program Office ("IPO")—which handles investor program applications—to "designate particular petitions to prioritize for processing by factoring in the availability of EB-5 immigrant visas and determining whether a visa is available or soon to be available to a petitioner."  *Nohria*, 2021 WL 950511, at *3.  The IPO makes this determination by taking into account the petitioner's country of birth and the availability of visas for that country (as set out in the Visa Bulletin).  *Id.*; *see also* Pls.' Opp'n at 7.  Once a petition is designated for priority, it goes through the "first-in, first-out" process among other similarly-designated visas, and once it is approved by USCIS, it is sent to the National Visa Center for processing.[8]  *Nohria*, 2021 WL 950511, at *3.  According to the Government, this new process allows visa petitioners from countries where visas are immediately available to make more efficient use of each country's annual allotment of visas.  *See* Def.'s Mot. at 10.[9]

---

[7] *See also* U.S. Citizenship & Immigration Services, USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory ("EB-5 Processing Announcement") (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last accessed Mar. 22, 2021).

[8] *See* U.S. Department of State, Immigrant Visa Process, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited Mar. 22, 2021); U.S. Citizenship & Immigration Services, Questions And Answers (Sept. 17, 2020), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last accessed Mar. 22, 2021).

[9] *See also* EB-5 Processing Announcement, *supra* note 7.

### B.  Factual Background

Plaintiffs each filed a Form I-526 with USCIS before October 1, 2019. They each claim to have each invested at least $500,000 in an approved "Regional Center." Am. Compl. ¶¶ 124, 127, 142, 145, 151, 154. As of the date they filed their Amended Complaint, Plaintiffs had been waiting between 18 and 20 months for a decision by USCIS on their I-526 petitions. *Id.* ¶¶ 131, 149, 158. Each Plaintiff contends that under the "Visa Availability" approach adopted by USCIS, they should "be given priority processing," *id.* ¶ 68, because their assigned "priority dates" are "current" based on the State Department Visa Bulletin, *id.* ¶¶ 130, 148, 157.

Plaintiffs bring a single claim against the Government under the APA for an "unreasonable delay" in acting on their pending I-526 petitions.  *See id.* ¶¶ 179, 180.  Plaintiffs ask the Court to "declare" the delay in processing their I-526 petitions "unreasonable" and order USCIS to make a decision on all of their pending petitions.  *Id.* ¶¶ 204, 205.  Plaintiffs also seek fees under the Equal Access to Justice Act.  *Id.* ¶¶ 202, 203, 206. USCIS moved to dismiss Plaintiffs' Amended Complaint, arguing that Plaintiffs have failed to state a claim of "unreasonable" delay. *See generally* Def.'s Mot.  That motion is now ripe for the Court's consideration.

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice*. Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.    DISCUSSION

The Government moves to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it fails state a claim of unreasonable delay under the APA.  Def.'s Mot. at 6–7.  Plaintiffs oppose the Government's motion, arguing that it is premature and that the complaint pleads sufficient facts to warrant discovery.  Pls.' Opp'n at 13.  The Court finds that Plaintiffs' Amended Complaint fails to allege a plausible claim of unreasonable delay, and therefore shall grant the Government's Motion to Dismiss.

The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  If agencies fail to do so, courts may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1)  "There is 'no per se rule as to

how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation omitted) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)).

To determine whether Plaintiffs have sufficiently alleged that agency action has been "unreasonably delayed," the Court must apply the six factors laid out by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir.

2003).  Moreover, the D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay."  *Id.* (internal citations and quotation marks omitted).  It therefore has refused to grant relief where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

As a threshold issue, the Court must consider whether it is appropriate to apply the *TRAC* factors at this procedural juncture.  Plaintiffs suggest that doing so is premature.  Pls.' Mot. at 1–2, 13.  To be sure, the D.C. Circuit has explained that a "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."  *Mashpee*, 336 F.3d at 1100.  Citing this reasoning, some courts in this jurisdiction have declined to evaluate claims of "unreasonable delay" before discovery, noting that doing so would be  "premature" because the inquiry is "fact intensive."  *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020); *see also Addala v. Renaud*, No. 20-cv-2460-RCL, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021) (declining to  "consider whether the agency has unreasonably delayed adjudication of the plaintiffs' visa applications until it has a sufficient record to answer that question").

Other courts, however, have granted motions to dismiss based on their application of the *TRAC* factors to the factual allegations of a complaint asserting a claim of "unreasonable delay." *See, e.g. Palakuru v. Renaud*, No. 20-cv-02065 (TNM), 2021 WL 674162, at *3–6 (D.D.C. Feb. 22, 2021) (noting that it is "appropriate" to consider whether EB-5 petitioner's complaint "meets Rule 12(b)(6) pleading standards" by applying *TRAC* factors); *Sarlak v. Pompeo*, No. 20-cv-35-BAH, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (acknowledging the plaintiffs' argument that applying the *TRAC* factors at the motion-to-dismiss stage was premature, but

deciding that "[n]evertheless, in cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay"(internal citations and quotation marks omitted)); *see also Ghadami v. DHS*, No. 19-cv-00397-ABJ, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (acknowledging the split in authority but deciding that "it is appropriate for the Court to apply the factors at th[e] [motion-to-dismiss] stage"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175–77 (D.D.C. 2020) (applying *TRAC* factors to resolve the government's motion to dismiss); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93–96 (D.D.C. 2020) (same); *Mirbaha v. Pompeo*, No. 20-cv-299 (TJK), 2021 WL 184393, at *4 (D.D.C. Jan. 19, 2021) (same).  As with these cases, the Court finds that the record here contains "enough facts to evaluate the *TRAC* factors now."  *Sarlak*, 2020 WL 3082018, at *5.  Doing so, the Court finds that Plaintiffs have failed to state a claim for "unreasonable delay" under the APA.[10]

## A.  First *TRAC* Factor

The first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—weighs in favor of the Government.  The D.C. Circuit has explained that this factor is the "most important."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It requires the Court to identify whether there is "any rhyme or reason" for the Government's

---

[10] Consistent with other courts in this jurisdiction, the Court shall grant the Government's motion to waive compliance with Local Civil Rule 7(n)'s requirement that the agency submit an index of the administrative record.  *See* Def.'s Mem. at 7 n.5; *see also Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (explaining that "there is no administrative record for a federal court to review" in cases of alleged agency inaction); *Addala*, 2021 WL 244951, at *3 ("grant[ing] the agency relief from the requirements of Local Civil Rule 7(n)" because "there is no administrative record to produce" in a case of agency inaction); *Palakuru*, 2021 WL 674162, at *3 n.6 (same).

delay—in other words, "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Here, USCIS argues that its "visa availability approach" provides an identifiable rationale to guide its adjudication of visa petitions; it "prioritizes petitions for individuals from countries where visas are currently available" and "allows qualified EB-5 petitioners from traditionally underrepresented countries to have petitions approved in a more timely fashion." Def.'s Mot. at 10. This explanation provides an "identifiable rationale" for Defendant's approach to processing I-526 petitions. Two other courts in this jurisdiction have recently so agreed. *See Palakuru*, 2021 WL 674162, at *3 ("The Court finds that the Government's process for adjudicating I-526 petitions is governed by a rule of reason."); *Nohria*, 2021 WL 950511, at *6 n.5 ("The agency's process is clearly governed by a solid rule of reason—the visa availability approach—meeting the first factor[.]").

Plaintiffs argue that the Government has not applied its stated "rule of reason" to *their* petitions, noting that their "priority date" for visa eligibility is current, and that they are also entitled to priority status because they invested in "Regional Centers." *See* Pls.' Opp'n at 14–15. Plaintiffs' arguments, however, fail to account for other petitioners in precisely the *same* situation who may have filed their petitions earlier. *See, e.g.*, *Palakuru*, 2021 WL 674162 at *3. And even when "Regional Center" petitions receive priority status, they still go through a "first in, first out" process.[11] *See supra* Section I(A). Other courts have recognized that a "first in, first out" method

---

[11] Plaintiffs speculate in their Complaint that "USCIS does not decide EB-5 Visa petitions on a "first in, first out" basis, and "it never has." Am. Compl. ¶ 184. In their Opposition, they argue that this bare allegation, coupled with testimony of a "USCIS official regarding exceptions to first in, first out" discussed in one out-of-circuit district court case provide "enough evidence at this stage of litigation strongly suggesting that USCIS never consistently followed a first-in, first-out policy." Pls.' Opp'n at 15. The Court disagrees, and finds Plaintiffs' conclusory assertion is insufficient to tip the scale in its favor on the first *TRAC* factor.

supplies an adequate rule of reason to tip this "most important" *TRAC* factor in the Government's favor.  *See, e.g. Nibber v. U.S. Citizenship & Immigr. Servs.*, 20-3207 (BAH), 2020 WL 7360215, at *5 (D.D.C. Dec. 15, 2020); *Uranga v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-0521 (ABJ), 2020 WL 5763633, at *11 (D.D.C. Sept. 28, 2020); *Muvvala v. Wolf*, 20-cv-02323 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020).  The Government has supplied a rule of reason for the timing of its adjudicative process of I-526 petitions.

**B.  Second *TRAC* Factor**

The second *TRAC* factor requires courts to consider whether a "statutory timeline" supplies content for the "rule of reason" inquiry.  *TRAC*, 750 F.2d at 80.  Plaintiffs argue that the INA sets "a timeframe" by which the Government must adjudicate petitions.  Pls.' Opp'n at 16. Specifically, Plaintiffs point to  8 U.S.C. § 1571(b), which states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b); *see* Am. Compl. ¶ 189.  The Government argues that this "sense of Congress" language sets a "goal, not a mandate" and is therefore not binding on the agency.  Def.'s Mot. at 11.

The D.C. Circuit has recognized that "a sense of Congress resolution is not law." *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact").  Citing this precedent, some courts in this jurisdiction have treated § 1571(b) as "nonbinding," prompting them to weigh this factor in the Government's favor, even when the Government's time for adjudicating a visa petition has surpassed 180 days.  *See, e.g. Palakuru*, 2021 WL 674162, at *4.  But the question posed by *TRAC*

is not whether Congress has established a "binding" timetable, but whether it has provided an "indication of the speed with which it expects the agency to proceed." *Uranga*, 2020 WL 5763633, at *12 (citing *TRAC*, 750 F.2d at 80).  Other courts, accordingly, have found that § 1571(b) is "certainly [an] indication of the speed with which it expects the agency to proceed," and weighed this factor in favor of a petitioner when the agency's processing time exceeds 180 days.  *See, e.g.*, *id.* (citing *A.C.C.S. v. Nielsen*, CV 18-10759-DMG, 2019 WL 7841860, at *5 (C.D. Cal. Sept. 17, 2019); *Khan v. Johnson,* 65 F. Supp. 3d 918, 930 (C.D. Cal. 2014); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014)).  This Court tends to agree that this factor tips in Plaintiffs' favor, accounting for Congress's stated goal of processing visa petitions within six months compared to Plaintiffs' waiting times of, in some cases, more than two years.[12]

This finding, however, does not automatically compel a finding that Plaintiffs have stated a claim for unreasonable delay to survive a Rule 12(b)(6) motion.  In *Uranga*, for example, the court concluded that plaintiff had failed to state a claim for unreasonable delay in the government's adjudication of a visa petition even though the court weighed the second *TRAC* factor against the government.  *Uranga*, 2020 WL 5763633, at *12; *see also Palakuru*, 2021 WL 674162, at *4 ("Even if the Court was to conclude that § 1571(b) provides some 'indication of the speed with which [Congress] expects the agency to proceed,' *TRAC*, 750 F.2d at 80, though, the Court's rule-of-reason analysis would remain unchanged.").

---

[12] The Government correctly notes that in other cases challenging delays in immigration-related agency actions, courts "turn to case law as a guide" to determine what is "unreasonable." Def.'s Mot. at 11; *see Sarlak*, 2020 WL 3082018, at *5 ("No bright lines have been drawn in this context, but [d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."(internal citations and quotation marks omitted)). But those cases analyze agency actions for which there is no "congressionally supplied yardstick" for the agency action at issue. *See, e.g. id.; Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) ("[T]here is no deadline or timeframe prescribed by Congress for these investigations.").

## C. **Fourth *TRAC* Factor**

The fourth *TRAC* factor weighs in the Government's favor. This factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. In other words, the Court considers whether expediting Plaintiffs' Forms I-526 would "harm other agency activities of equal or greater priority." *Nibber*, 2020 WL 7360215, at \*7. The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when *all the other factors* considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d at 75) (emphasis added); *see also Ghadami*, 2020 WL 1308376, at \*9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76; *see also Skalka*, 246 F. Supp. 3d at 153 ("[T]he plaintiff's injury stemmed in part from a lack of resources and that is a problem for the political branches to work out." (internal quotation marks and citation omitted)).

The Government argues that this factor weighs in its favor because Plaintiffs here seek a court order allowing their visa applications to move to the head of the processing queue. Def.'s Mot. at 14. Plaintiffs counter that USCIS itself "endorses so-called line jumping" by giving "priority" to petitioners who "have visas immediately available" and "who are investors in regional centers." Pls.' Opp'n at 21. This argument ignores that a court order directing USCIS to process Plaintiffs' applications would still put them ahead in the queue of those similarly situated. *See, e.g. Palakuru*, 2021 WL 674162, at \*5 ("Granting [plaintiff] relief here would advance his petition

in front of other similarly situated—with respect to the availability of visas and investment in a regional center—who filed their petitions earlier.").  The Court finds that any delay in adjudicating Plaintiffs' petitions reflects USCIS's competing priorities and resources such that granting Plaintiffs' requested relief would simply move them ahead in the processing queue to the detriment of other similarly situated visa applicants.  Accordingly, the fourth *TRAC* factor favors the Government.

### D.  Third & Fifth *TRAC* Factors

The third and fifth factors are often considered together, and require the Court to consider Plaintiffs' interests, health, and welfare.  *Ghadami*, 2020 WL 1308376, at *9.  Plaintiffs allege that they have been harmed by the delays in adjudicating their I-526 petitions because their "lives are on hold" and the delays have pushed back their "eligibility to eventually naturalize as United States citizens."  Am. Compl. ¶ 190.  This allegation falls short of meeting the third and fifth *TRAC* factors of showing that human health and welfare are at stake or that there are other interests prejudiced by the agency's delay. *See Nohria*, 2021 WL 950511, at *6 n.5.

Although the Court recognizes that Plaintiffs certainly have an interest in swift adjudication of their visa petitions, "so too do many others facing similar circumstances." *Palakuru*, 2021 WL 674162, at *5.  Plaintiffs here have not pled plausible allegations of harm to their "health and welfare" present in other cases in which courts have weighed these factors in a plaintiff's favor. *See, e.g., Ghadami*,  2020 WL 1308376, at *9 (weighing third and fifth *TRAC* factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision  on whether he was entitled to waiver of immigration restrictions in Presidential Proclamation 9645); *Didban*, 435 F. Supp. 3d at 177 (finding plaintiffs' interests in having their waiver application adjudicated were "undeniably

significant" because they had "to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married coupled"). Accordingly, Plaintiffs have not alleged that human health and welfare are at stake or that there are other prejudiced interests beyond their interest in having their applications promptly adjudicated.

### E.  Sixth *TRAC* factor

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. In their Complaint, Plaintiffs allege that the USCIS has taken "affirmative actions to purposefully delay adjudications of EB-5 petitions" and that the "circumstantial evidence of impropriety is palpable," given the "explosion in processing times." Am. Compl. ¶¶ 194–195. In their Opposition to the Government's motion to dismiss, Plaintiffs raise no specific arguments about the sixth factor. *See* Def.'s Reply at 11. The Court finds that Plaintiffs' allegations on this point lack "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiffs, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth *TRAC* factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] Form I-526 processing times").

\*\*\*

Upon review of all six *TRAC* factors, the Court finds that the Amended Complaint does not state a claim for unreasonable delay. The second factor may weigh in Plaintiffs' favor because the Government's time for processing their visa petitions has surpassed 180 days. But the remaining factors—the "rule of reason" governing the Government's processing of I-526 petitions,

the absence of any justification for expediting the processing of Plaintiffs' petitions at the expense of other similarly situated petitioners, and the absence of any other harm to health or welfare—considered together, favor the Government and demonstrate that Plaintiffs have not stated a claim under the APA for unreasonable delay.  *See Sarlak*, 2020 WL 3082018, at *6 (reaching the same conclusion); *Ghadami*,  2020 WL 1308376, at *9 (same); *Nohria*, 2021 WL 950511, at *6 n.5 (same); *Palakuru*, 2021 WL 674162, at *6 (same).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the claims of the nine Plaintiffs whose Forms I-526 petitions have been adjudicated are moot and shall be dismissed.  As to the remaining three Plaintiffs, the Amended Complaint fails to state a claim for unreasonable delay under the APA. The Court shall grant the Government's motion to dismiss and shall dismiss the Amended Complaint without prejudice as to those three Plaintiffs.  An appropriate order accompanies this Memorandum Opinion.

_____/S/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge